**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**

_____

**JESSE N. SCHROEDER, D.D.S.,**

                                    **Plaintiff,**                    **07-CV-0394A(Sr)**

**v.**

**NORTH FORK BANK,**

                                    **Defendant.**

_____

## REPORT, RECOMMENDATION AND ORDER

        This matter was referred to the undersigned by the Hon. Richard J.

Arcara, in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and

report upon dispositive motions.  Dkt. #6.


        Currently before the Court is plaintiff's motion for summary judgment on

the first cause of action alleging breach of contract (Dkt. #44), and defendant's motion

for summary judgment dismissing plaintiff's breach of contract, breach of fiduciary duty

and negligence claims.  Dkt. #45.  For the following reasons, it is recommended that

plaintiff's motion be granted and defendant's motion be denied.


## BACKGROUND

        Plaintiff, Jesse N. Schroeder, D.D.S. ("Dr. Schroeder"), is a licensed

orthodontist in Texas.  Dkt. #44-3, ¶ 2.  On November 11, 1997, plaintiff joined the Mid

Atlantic Association of Medical Professionals Voluntary Employees' Beneficiary

Association Plan ("VEBA Plan"), by executing the Mid Atlantic VEBA Plan Adoption

Agreement ("Adoption Agreement"), and consenting to become a party to the Mid

Atlantic Association of Medical Professionals Voluntary Employees' Beneficiary

Association Trust  ("Trust Agreement").  Dkt. #44-2.  The VEBA Plan was marketed to

Dr. Schroeder by Nicholas Magalhaes through his company, Asset Accumulation, Inc.

("Asset Accumulation"), as a tax deductible employee welfare benefit plan.  Dkt. #44-3,

¶¶ 6-7; Dkt. #47-9, p.17-20; Dkt. #47-11.


        The Adoption Agreement names Dr. Schroeder as Plan Administrator and

North Fork Bank as trustee.  Dkt. #44-2, p.54.  However, Mr. Magalhaes testified at his

deposition that Asset Accumulation procured the life insurance policies, selected the

trustee, prepared invoices to the employers and forwarded the contribution checks to

North Fork Bank.  Dkt. #47-9, pp.14-15.  At the direction of Mr. Magalhaes and in

accordance with an Insurance Authorization Agreement signed by Dr. Schroeder as

owner, North Fork Bank purchased whole life insurance policies insuring the lives of Dr.

Schroeder and his employees from Indianapolis Life Insurance Companies, to be held

in trust by North Fork Bank pursuant to the Trust Agreement for the benefit of the

insureds and their beneficiaries.  Dkt. #44-2, p.17 & Dkt. #47-9, pp.15-16 & 21.


        For several years thereafter, Asset Accumulation directed Dr. Schroeder

to remit his VEBA contributions to Asset Accumulation, with the check made payable to

North Fork Bank.  Dkt. #47-4.  Asset Accumulation also invoiced Dr. Schroeder for

annual membership, administration and trustee fees.  Dkt. #47-4.  Dr. Schroeder wrote

checks payable to North Fork Bank for the annual premiums due on the life insurance

policies and mailed them to Asset Accumulation, which delivered them to North Fork

Bank.  Dkt. #44-2, pp.150- 71.  North Fork Bank paid the policy premiums to

Indianapolis Life Insurance Companies.  Dkt. #44-2, p.147; Dkt. #47-9, p.18.


In the Spring of 2001, North Fork Bank resigned as trustee.  Dkt. #44-3,

¶ 14 & Dkt. #48, ¶ 16.  At his deposition, Mr. Magalhaes testified that he suspected that

North Fork Bank's resignation was precipitated by an incident in which North Fork Bank

returned an adopted employer's contribution prior to purchasing insurance policies

because of allegations by the adopting employer that an employee of Asset

Accumulation had "doctored a signature."  Dkt. #57, pp.4-6.


The Trust Agreement provides that the trustee may resign at any time by

giving 30 days' notice in writing to the adopting employers.  Dkt. #44-2, p.73. Upon

resignation, the Trust Agreement provides that

> the Adopting Employers shall appoint a successor Trustee
> who shall have the same powers and duties as those
> conferred upon the Trustee hereunder.  Upon acceptance of
> such appointment by the successor Trustee, the Trustee
> shall assign, transfer, and pay over to such successor
> Trustee the funds and properties then constituting the Trust
> Fund.

Dkt. #44-2, p.73.  The Trust Agreement identifies Jesse Schroeder, DDS as the

adopting employer.  Dkt. #44-2, p.64.  The VEBA Plan defines "Employer" as "each

Employer who has adopted this Plan by executing an Adoption Agreement" and states

that  "Adopting Employers" refers to the "Employers collectively."  Dkt. #44-2, p.32.

By letter dated August 31, 2001, Mid States Benefits Corp. ("Mid States Benefits"), provided Indianapolis Life Insurance Company with transfer of ownership forms transferring eight life insurance policies, including the policies held in trust for Dr. Schroeder, from North Fork Bank to Mid States Benefits.  Dkt. #47-7.  The transfer of ownership forms are signed by North Fork Bank, as Trustee (Karen Hubbard), and Nicholas Magalhaes, Trustee, as the New Owner.  Dkt. #47-7.  Mr. Magalhaes was the President of Mid States Benefits.  Dkt. #47-11, ¶ 4.  There is no evidence before the Court to suggest that North Fork Bank had any communication with Dr. Schroeder regarding its resignation or the transfer of ownership of the trust assets from North Fork Bank to Mid States Benefits.  Dkt. #44-2, pp.165-67.

By letter dated January 10, 2002, Asset Accumulation directed Dr. Schroeder to remit a check made "payable to **Mid States Benefits Corp**. successor Trustee to North Fork Bank, for deposit to Hudson United Bank" and to remit annual fees by check made payable to Asset Accumulation.  Dkt. #47-5.  Dr. Schroeder remitted a check made payable to Mid States Benefit, but denied any understanding as to the change of payee from North Fork Bank to Mid States Benefits or the meaning of successor.  Dkt. #47-10, pp.19-22.

At some point subsequent to the transfer of the insurance policies, Mid States Benefits obtained loans against the cash value of the insurance policies and used the proceeds for its own purposes.  Dkt. #44-2, pp.187-193.  In 2005, Mr. Magalhaes entered a plea of guilty in the United States District Court for the Eastern

-4-

District of New York to a criminal information charging four counts of mail fraud for

unlawfully obtaining loans against life insurance policies.  Dkt.#47-11.


## DISCUSSION AND ANALYSIS

**Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "In reaching this determination, the

court must assess whether there are any material factual issues to be tried while

resolving ambiguities and drawing reasonable inferences against the moving party, and

must give extra latitude to a *pro se* plaintiff."  *Thomas v. Irvin*, 981 F. Supp. 794, 798

(W.D.N.Y. 1997) (internal citations omitted).


A fact is "material" only if it has some effect on the outcome of the suit.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*,

140 F.3d 91, 93 (2d Cir. 1998).  A dispute regarding a material fact is genuine "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*,

502 U.S. 849 (1991).


Once the moving party has met its burden of "demonstrating the absence

of a genuine issue of material fact, the nonmoving party must come forward with

enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982 (internal citations omitted).   A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and invoke the appropriate statute.  The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

**Breach of contract**

North Fork Bank argues that it's alleged failure to provide notice of its resignation as trustee to plaintiff is immaterial because plaintiff was aware that Mid States Benefits had been substituted as the successor trustee to North Fork Bank prior to Mr. Magalhaes conversion of the trust assets.  Dkt. #46, pp.7-14.  More specifically, North Fork Bank argues that plaintiff ratified the appointment of a successor trustee when it mailed its premium check to Mid States Benefits, thereby absolving North Fork Bank from any liability for subsequent actions.  Dkt. #53, pp.2 & 7-9.  In addition, North Fork Bank argues that Mr. Magalhaes' criminality was an unforeseeable intervening act that severed the causal link between North Fork Bank's resignation as trustee and plaintiff's damages.  Dkt. #53, pp.3-4.  In other words, North Fork Bank argues that it's resignation as trustee is not the proximate cause of plaintiff's injury.  Dkt. #53, p.4.

Plaintiff responds that North Fork Bank's obligation to provide notice cannot be excused because North Fork Bank was acting in the capacity of trustee to plaintiff and, even if it could be excused, plaintiff emphasizes that this is not a case of a technical defect in the content or delivery of notice to plaintiff, but a total absence of notice to plaintiff.  Dkt. #50, pp.2-5.  Plaintiff rejects the suggestion that the draft of one check made payable to Mid States Benefits is sufficient to demonstrate notice of North Fork Bank's resignation as trustee, let alone, ratification of the change of trustee.  Dkt. #50, pp.2 & 7.  In addition, plaintiff argues that there is a question of fact as to whether the loans began before the 2002 premium payment.  Dkt. #50, p.6.  Furthermore, plaintiff argues that North Fork Bank cannot demonstrate lack of prejudice as North Fork Bank's failure to provide notice of its resignation to plaintiff prevented plaintiff from selecting the new trustee and allowed Mr. Magalhaes to substitute Mid States Benefits Corporation without plaintiff's knowledge.  Dkt. #50, pp.9-10.  In addition, plaintiff argues that the transfer of ownership of the insurance policies without authorization from Dr. Schroeder was a separate breach of the Trust Agreement and that there can be no dispute but that North Fork's unauthorized transfer of the insurance policies to Mid States Benefits was the proximate cause of plaintiff's injury.  Dkt. #50, pp.10-11 & Dkt. #57, pp.15-19.

In reply, North Fork Bank notes that it communicated its resignation to Asset Accumulation in accordance with prior practice, noting that Asset Accumulation had been responsible for all prior communication between plaintiff and North Fork Bank.  Dkt. #54, p.3.  North Fork Bank also notes that the term "successor trustee" is

defined within the Trust Agreement, thereby affording plaintiff notice of its meaning. Dkt. #54, p.3.  In addition, North Fork Bank replies that it is clear from discovery that the loan requests occurred on October 16, 2003, November 6, 2003 and January 29, 2004, subsequent to the payment of premiums to Mid States Benefits.  Dkt. #54, pp.4-5. Finally, North Fork Bank argues that it cannot be held liable for breach of section 6.3 of the Trust Agreement because that section does not preclude North Fork Bank from relying upon the agent's direction to transfer the assets to the successor trustee.  Dkt. #54, pp.7-8.

The elements of a breach of contract claim in New York are: (1) the existence of an agreement between plaintiff and defendant; (2) adequate performance of the contract by plaintiff; (3) breach of the agreement by defendant; and (4) damages tp the plaintiff caused by defendant's breach.  *Diesel Props. S.r.I. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011).  "Causation is an essential element of damages in a breach of contract action; and, as in tort, a plaintiff must prove that a defendant's breach *directly and proximately* caused his or her damages."  *Id., quoting Nat'l Market Share v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004).  "Damages for breach of contract must be such only as actually follow or may follow from the breach of contract."  *Nat'l Market Share*, 392 F.3d at 525 (internal quotation omitted). "Recovery is not allowed if the claimed losses are 'the result of other intervening causes.'"  *Diesel Props*, 631 F.3d at 52, *quoting Nat'l Market Share*, 392 F.3d at 525.

In the instant case, there is no dispute but that Dr. Schroeder and North Fork Bank entered into a contract and that plaintiff performed his obligations under the contract by remitting checks for the insurance policy premiums payable to North Fork Bank, while North Fork Bank breached its obligations under the contract by failing to notify Dr. Schroeder of its decision to resign as trustee and by transferring ownership of the trust assets to a third party without authorization from Dr. Schroeder, thereby enabling the third party to abscond with the trust assets.  Given that North Fork Bank's failure to notify Dr. Schroeder of its resignation and transfer of ownership of the trust assets to Mid States Benefits without authority from Dr. Schroeder created the conditions which allowed Mr. Magalhaes to obtain loans against the trust assets, North Fork Bank cannot claim that Dr. Magalhaes' actions constitute an intervening cause. *See Oei v. Citibank, N.A.,* 957 F. Supp. 492, 508 (S.D.N.Y. 1997) (Citibank's breach of the application agreement caused plaintiff's loss because if Citibank had not honored the nonconforming documents, thrid-party's fraud could not have succeeded);  *Horstein v. General Motors Corp*., 391 F. Supp. 1274, 1277 (1975) (where an intervening cause is set in motion by the original wrongdoer, the original wrongdoer must answer for all consequences which may ensue in the ordinary course of events even though such consequences are immediately and directly brought about by the intervening cause) .

Even if it had asserted the affirmative defense of ratification in its answer, North Fork Bank cannot prevail on such a defense.  "The act of ratification, whether express or implied, must be performed with full knowledge of the material facts related to the transaction, and the assent must be clearly established and may not be inferred

from doubtful or equivocal acts or language." *Holm v. C.M.P. Sheet Metal, Inc.*, 89 A.D.2d 229, 233 (4th Dep't 1982); *See In re Levy*, 69 A.D.3d 630, 632 (2d Dep't) ("The essence of ratification is that the beneficiary unequivocally declares that he does not regard the act in question as a breach of trust but rather elects to treat it as a lawful transaction under the trust."), *lv. denied*, 14 N.Y.3d 711 (2010); *See also Banque Arabe Et Internationale D'Investissement v. Maryland Nat'l Bank*, 850 F. Supp. 1199, 1213 (S.D.N.Y. 1994), *aff'd* 57 F.3d 146 (2d Cir. 1995).  The drafting of one check made payable to Mid States Benefits is insufficient to demonstrate unequivocal assent to the transfer of the trust assets to Mid States Benefits.  In addition, there is nothing in the record to suggest that Dr. Schroeder had any knowledge of the material fact, known to North Fork Bank, that Mr. Magalheas was the President of Mid States Benefits, the new trustee.


**Breach of Fiduciary Duty**

North Fork Bank argues that plaintiff's breach of fiduciary duty claim is duplicative of the breach of contract claim.  Dkt. #46, pp.10-12.


Plaintiff responds that the breach of fiduciary claim is not duplicative because North Fork Bank owed plaintiff a duty independent of the contract to exercise reasonable care in the administration of the trust and transfer of ownership of the insurance policies.  Dkt. #50, pp.12-14.  Given North Fork Bank's investigation of allegations that Asset Accumulation forged employer documents, plaintiff also argues

that North Fork Bank had an affirmative obligation to advise plaintiff of the reason for its resignation as trustee.  Dkt. #57, p.19.

"Under New York law, parties to a commercial contract do not ordinarily bear a fiduciary relationship to one another unless they specifically so agree."  *Calvin Klein Trademark Trust v. Wachner*, 123 F. Supp.2d 731, 733-34 (S.D.N.Y. 2000).  In the instant case, however, the trust agreement establishes a fiduciary duty owed to Dr. Schroeder by North Fork Bank. *See S.E.C. v. Smith*, 710 F.3d 87, 96 (2d Cir. 2013) ("Trustees . . . act on behalf of a party and have a fiduciary duty to that party."); *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Securities, LLC*, 592 F. Supp.2d 608, 624 (S.D.N.Y. 2009) ("fiduciary relationship may arise where the parties to a contract specifically agree to such a relationship").  As a fiduciary relationship creates duties independent of the contract which established that relationship, it is recommended that defendant's motion for summary judgment with respect to the breach of fiduciary duty cause of action be denied.

**Negligence**

North Fork Bank argues that plaintiff's negligence claim is duplicative of the breach of contract claim and that any damages sustained by plaintiff were pure economic losses which are not recoverable in a tort action.  Dkt. #46, pp.12-14.

Plaintiff responds that North Fork Bank owed an independent duty to exercise reasonable care transferring the insurance policies.  Dkt. #50, pp.14-15.

-11-

In light of the Court's determination that a legal duty independent of the contract has been established, the negligence cause of action is not duplicative of the breach of contract cause of action. *See Consolidated Risk Servs., Inc. v. Auto. Dealers WC Self Ins. Trust,* No. 06-CV-871, 2007 WL 951565, at * 2 (N.D.N.Y. March 27, 2007) ("where the plaintiff sufficiently pleads a duty beyond the scope of the contract, he can also maintain other tort claims."), *citing Sergeants Benevolent Assoc. Annuity Fund v. Renck*, 19 A.D.3d 107, 111 (1st Dep't 2005) ("Since we have concluded . . . that a claim for breach of fiduciary duty has been sufficiently pleaded, a duty on the part of the [defendants] beyond the scope of the agreement has been alleged and the negligence claim should be reinstated.").

Although some courts have applied the economic loss rule expansively, the New York State Court of Appeals has declined to apply it beyond its original application and has clearly stated that the economic loss rule "stands for the proposition that an end-purchaser of a product is limited to contract remedies and may not seek damages in tort for economic loss against a manufacturer." *532 Madison Ave. Gourmet Foods, Inc. v. FinalIndia Ctr., Inc.*, 96 N.Y.2d 280, 288 (2001).  Instead, the Court of Appeals applied traditional principles to assess the appropriate scope of duty for a landowner whose construction activities caused extensive street closures, resulting in economic losses for businesses within the barricades, holding that the landowner did not owe a duty to protect nearby businesses from economic loss in the absence of personal injury or property damage.  *Id.* at 292.  As the Court has found that North Fork Bank owed plaintiff a duty independent of the contract, the economic loss rule should

not be a barrier to recovery on plaintiff's negligence cause of action.  *See Travelers Cas. & Surety Co. v. Dormitory Auth*., 734 F. Supp.2d 368, 378 (S.D.N.Y. 2010) (recognizing disagreement over whether economic loss rule should apply beyond product liability suits against manufacturers and holding that the principle should only bar liability in the absence of "a special relationship that requires the defendant to protect against the risk of harm to plaintiff."); *Hydro Investors, Inc. v. Trafalgar Power, Inc.,* 227 F.3d 8, 18 (2d Cir. 2000) (declining to apply economic loss rule as a bar to recovery of lost revenues where those damages were the result of defendants' failure to exercise reasonable care in providing engineering services even though the parties entered into contracts for such services).

## CONCLUSION

For the reasons set forth above, it is recommended that plaintiff's motion for summary judgment on the first cause of action alleging breach of contract (Dkt. #44), be granted and defendant's motion for summary judgment dismissing plaintiff's breach of contract, breach of fiduciary duty and negligence claims be denied. Dkt. #45.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.  *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

**DATED:**     **Buffalo, New York**
              **February 14, 2014**

                                    *s/ H. Kenneth Schroeder, Jr.*
                                    **H. KENNETH SCHROEDER, JR.**
                                    **United States Magistrate Judge**